IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PENHALL, et al.,<br><br>                Plaintiffs,<br>v.<br>YOUNG LIVING ESSENTIAL OILS,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER DENYING [96] MOTION TO COMPEL ARBITRATION<br><br>Case No. 2:20-cv-00617-DBB-CMR<br><br>District Judge David Barlow<br><br>Magistrate Judge Cecilia M. Romero |

This matter is referred to the undersigned in accordance with 28 U.S.C. § 636(b)(1)(A) (ECF 50; ECF 85). Before the court is Defendant Young Living Essential Oils' (Defendant) Motion to Compel Arbitration (Motion) (ECF 96) asking the court to compel Plaintiffs Lindsay Penhall (Penhall), Sarah Maldonado (Maldonado), and Tiffanie Runnel (Runnels) (collectively, Plaintiffs) to individual arbitrations and to stay this action pending these proceedings. Having carefully considered the relevant filings, the court finds that oral argument is not necessary and will decide this matter on the basis of written memoranda. *See* DUCivR 7-1(g). For the reasons stated below, the court hereby DENIES the Motion.

                I.       FACTUAL BACKGROUND[1]

**Original Arbitration Agreement**

Defendant sells essential oils, and Plaintiffs are former distributors of Defendant's products, referred to as "members." During the relevant time period from August 2014 to July 2020, members were required to agree to Defendant's (1) Member Agreement (the Member

---

[1] Unless otherwise indicated, the facts stated herein are drawn from the factual background set forth in pages 2 through 6 of the Motion, as Plaintiffs did not include a separate statement of facts in their Opposition (ECF 101)

Agreement); (2) Policies and Procedures (the P&Ps); and (3) Compensation Plan (the Compensation Plan) (collectively, the Agreement). Defendant amended the Member Agreement and the P&Ps multiple times during this period. Notwithstanding, all versions of the P&Ps contained the following arbitration clause (the Original Arbitration Agreement):

> 13.2.2 ARBITRATION
>
> If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration. The parties waive all rights to trial by jury or to any court. The arbitration will be filed with, and administered by, the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services ("JAMS") under their respective rules and procedures. The Commercial Arbitration Rules and Mediation Procedures of the AAA are available at the AAA's website at adr.org. The Streamlined Arbitration Rules & Procedures of JAMS are available at the JAMS website at jamsadr.com.

(Def. Ex. D-F § 13.2.2). In addition, the pre-2019 versions of the Member Agreement contained a jurisdiction and choice of law clause (the Forum Selection Clause), which stated that "any legal action concerning the Agreement will be brought in the state and federal courts located in Salt Lake City, Utah" (Def. Ex. A-B at § 9).

**2020 Arbitration Agreement**

On December 2, 2019, Defendant published the 2019 Member Agreement, which removed the Forum Selection Clause and replaced it with the following:

> The parties consent to jurisdiction and venue before any state or federal court located in Salt Lake City, Utah for any legal action not subject to arbitration, including for purposes of enforcing an award by an arbitrator, or any other matter not subject to arbitration as specified in the Policies and Procedures[.]

(Def. Ex. C.). Defendant also published the 2020 P&Ps on that date, which, like the prior versions of the P&Ps, contains an arbitration clause incorporating the JAMS rules (the 2020 Arbitration Agreement). The 2020 P&Ps also contain a retroactive clause stating, "Amendments will not apply

retroactively to conduct that occurred prior to the effective date of the amendment unless expressly accepted by the member" (the Retroactive Clause) (Def. Ex. G at §§ 1.4, 12.2).

**Distributor Enrollment Process**

During the relevant time period of 2014 to 2020, members were presented with a clickwrap agreement through Defendant's online enrollment. The clickwrap agreement has remained substantially the same during this time period. Directly below the clickwrap agreement text, members were presented with distinct hyperlinks, each of which contained the then-operative versions of the Member Agreement, the P&Ps, and the Compensation Agreement. Included with the clickwrap agreement text was a checkbox requiring the prospective member to acknowledge that they read and agreed to the Agreement before completing enrollment. After enrollment, members could purchase Defendant's products from its website at wholesale prices.

**Plaintiffs Tiffanie Runnels and Sarah Maldonado**

Runnels and Maldonado became members with Defendant through online enrollment on September 4, 2014, and December 19, 2018, respectively. During that process, they were presented with the clickwrap agreement and with hyperlinks containing the then-operative Member Agreement, the P&Ps, and the Compensation Plan, including the Original Arbitration Agreement. They both checked the box in the clickwrap agreement and completed the enrollment process to become members. During their time as members, they made the required monthly purchases.

**Plaintiff Lindsay Penhall**

Penhall became a member through online enrollment on May 24, 2018. During that process, she was presented with the clickwrap agreement and with hyperlinks containing the Member Agreement, the P&Ps, and the Compensation Plan, including the Original Arbitration Agreement. Penhall checked the box in the clickwrap agreement and completed the enrollment

process to become a member. During her time as a member, she made the required monthly payments to Defendant.

In November 2019, Penhall terminated her membership due to inactivity. On March 3, 2020, Penhall logged into and reactivated her member account. Penhall was presented with the clickwrap agreement and hyperlinks to the 2019 Member Agreement and the 2020 P&Ps, including the 2020 Arbitration Agreement and the Retroactive Clause. Penhall checked the box in the clickwrap agreement and completed the enrollment process to become a member. Penhall then made a purchase, and to place the order, she checked the box agreeing to the 2020 P&Ps.

## II. PROCEDURAL BACKGROUND

Penhall initiated this class action suit against Defendant in the Southern District of California on December 6, 2019 (ECF 1). On August 17, 2020, the Southern District of California transferred this case to the District of Utah (ECF 36-1). On September 30, 2020, Defendant moved to dismiss and compel arbitration (ECF 68). In response, on November 2, 2020, Penhall moved for leave to amend the complaint to add Runnels and Maldonado as parties (ECF 80). The court granted Plaintiffs leave to amend (ECF 88) and on this basis denied Defendant's motion to dismiss as moot (ECF 90).

On September 27, 2021, Defendant filed the instant Motion asking the court to stay this case and compel arbitration for all Plaintiffs under the Original Arbitration Agreement, or in the alternative, compel arbitration for Penhall under the 2020 Arbitration Agreement (ECF 96). Plaintiffs oppose the Motion on the grounds that (1) the Original Arbitration Agreement is not a valid agreement to arbitrate; (2) Penhall is not bound by the 2020 Arbitration Agreement; and (3) collateral and judicial estoppel bar Defendant's arbitration arguments (ECF 101). Defendant filed a Reply contesting each of these arguments (ECF 102). Defendant also filed a motion to dismiss

and to strike class allegations (ECF 97), which the court later denied without prejudice pending resolution of this Motion (ECF 105).

### III. LEGAL STANDARDS

The Federal Arbitration Act (FAA) provides that an arbitration agreement "shall be valid, irrevocable, and enforceable," and permits a "party aggrieved by the . . . refusal of another to arbitrate" to petition a federal district court for an order compelling arbitration in the manner provided in the agreement and staying the litigation until such arbitration has been held. 9 U.S.C. §§ 2-4. The determination of "whether to compel claims to arbitration is a two-step inquiry. First, the court must determine whether a valid agreement to arbitrate exists; and then, whether the dispute in question falls within the scope of that agreement." *Carter v. C.R. England, Inc.*, No. 2:21-cv-00102-DBB, 2021 WL 1820717, at *2 (D. Utah May 5, 2021) (citing *Soc'y of Prof'l Eng'g Emples. in Aero., Local 2001 v. Spirit Aerosystems, Inc.*, 681 F. App'x 717, 721 (10th Cir. 2017)).

Courts have "long recognized and enforced a 'liberal federal policy favoring arbitration agreements'" in the FAA. *Ragab v. Howard*, 841 F.3d 1134, 1138 (10th Cir. 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). However, the determination of "whether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate." *Id.* (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Thus, "although the presence of an arbitration clause generally creates a presumption in favor of arbitration, . . . 'this presumption disappears when the parties dispute the existence of a valid arbitration agreement.'" *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014) (quoting *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of*

*Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Rather, the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Id.*

The party "seeking to compel arbitration[] has the burden to show that arbitration agreements exist and apply to these [p]laintiffs." *Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1272 (D. Utah 2017) (citing *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). The court gives the party resisting arbitration "the benefit of all reasonable doubts and inferences that may arise." *Id.* (quoting *Hancock*, 701 F.3d at 1261). "If the court finds material factual disputes preclude it from determining the arbitration question as a matter of law, the court must proceed to summary trial to resolve those disputes of fact." *Id.* (citing *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 987 (10th Cir. 2014)).

## IV.   DISCUSSION

### A.   This Court has the Authority to Determine the Validity of the relevant Arbitration Agreement.

Defendant argues that the court must compel arbitration because the Original Arbitration Agreement delegates the issue of arbitrability, including validity, to the arbitrator (ECF 96 at 9). Plaintiffs respond that the court must determine the validity of an arbitration agreement before reaching the applicability of a delegation clause (ECF 101 at 6). The court agrees. The Tenth Circuit makes clear that "[t]he issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged such a clause." *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.1, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010)). In ruling on a motion to compel arbitration, it is the court who must undertake the first step of "resolv[ing] any issue that

calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (citing *Rent-A-Center*, 561 U.S. at 68–70). Where there is no valid agreement to arbitrate, the court need not "proceed to the second step and consider any delegation language[.]" *See Puchalski v. TCFC HotelCo, LP*, No. 2:19-cv-00812-DBB, 2020 WL 1891885, at * 2 (D. Utah. Apr. 16, 2020); *see also Born v. Progexion Teleservices, Inc.*, No. 2:20-cv-00107, 2020 WL 4674236, at *10 (D. Utah Aug. 11, 2020) ("[W]hile the Supreme Court has endorsed a liberal policy favoring arbitration, it has also 'made clear there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" (quoting *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002))).

Defendant relies on cases that support this two-step approach. *See Cordas v. Uber Techs.*, *Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (addressing the threshold question of whether a valid arbitration agreement was formed between the parties before addressing the delegation clause); *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("Arguments that an agreement to arbitrate was never formed . . . are to be heard by the court even where a delegation clause exists."). Defendant also relies on cases compelling arbitration where, unlike this case, the validity of the arbitration agreement itself was not at issue, *see Born*, 2020 WL 4674236, at *9 (addressing whether the defendants waived the right to arbitration); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1282–83 (10th Cir. 2017) (addressing whether the plaintiffs properly entered into the agreement to arbitrate), or not in dispute, *see Messerly Concrete, LC v. GCP Applied Techs., Inc.*, No. 1:21-cv-00074-DBB, 2021 WL 3145782, at *2 (D. Utah July 26, 2021) (noting the parties

"do not dispute the validity of the [a]greement" to arbitrate). The court therefore concludes that it has the authority to determine the validity of the arbitration agreements at issue in this case and will therefore proceed to making this determination.

### B. The Original Arbitration Agreement is Not a Valid Agreement to Arbitrate.

The court will begin by addressing the validity of the Original Arbitration Agreement. The question of whether a valid agreement to arbitrate exists "is simply a matter of contract between the parties." *Bellman*, 563 F. App'x 612 (quoting *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013)). Courts therefore "apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate." *Id.* (quoting *Walker*, 733 F.3d at 1004). Neither party disputes that Utah law applies in this case. Utah law provides that "[t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration. Consideration sufficient to support the formation of a contract requires that a performance or a return promise must be bargained for." *Trans-Western Petroleum, Inc. v. United States Gypsum Co.*, 830 F.3d 1171, 1177 (10th Cir. 2016) (quoting *Aquagen Int'l Inc. v. Calrae Tr.*, 972 P.2d 411, 413 (Utah 1998)). To form "an enforceable contract, there must be a meeting of the minds on the essential terms of the agreement." *Id.* at 1176.

Here, the parties do not dispute that all three Plaintiffs completed the online enrollment process to become members and thereby entered into the Member Agreement and the P&Ps containing the Original Arbitration Agreement (ECF 96 at 9; ECF 101 at 8-9). The disagreement lies as to the issue of whether the Original Arbitration Agreement is a valid agreement to arbitrate. Plaintiffs argue that the Original Arbitration Agreement is not valid because it irreconcilably conflicts with the Forum Selection Clause (ECF 101 at 9). In support of this argument, Plaintiffs rely on the *O'Shaughnessy* case, where a former member filed a class action against Defendant in

8

the Western District of Texas, and Defendant moved to compel arbitration pursuant to the Original Arbitration Agreement. In that case, the court denied the motion to compel arbitration and held that there was no binding arbitration agreement due to an irreconcilable conflict between the Original Arbitration Agreement and the Forum Selection Clause. *O'Shaughnessy v. Young Living Essential Oils, LC*, No. 19-CV-412-LY, 2019 WL 5296359, *4 (W.D. Tex. Oct. 18, 2019), *report and recommendation adopted*, 2019 WL 8587182 (W.D. Tex. Nov. 27, 2019), *aff'd*, No. 19-51169, 810 F. App'x 308 (5th Cir. 2020).[2]

The court finds the reasoning in the *O'Shaughnessy c*ase to be persuasive. Courts have recognized that "the FAA does not require an arbitration provision to be enforced if the provision is defective for reasons other than public policy or unconscionability." *Ragab*, 841 F.3d at 1138 (citing *NAACP of Camden Cty. E. v. Foulke Mgmt. Corp.*, 24 A.3d 777, 792 (N.J. Super Ct. App. Div. 2011; *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011)). Although courts have granted motions to compel arbitration "despite the existence of conflicting arbitration provisions when the contracts themselves provide the solution," denial of the motion to compel is warranted where, as here, the conflict "indicate[s] that there was no meeting of the minds with respect to arbitration." *See Ragab*, 841 F.3d at 1138. Under a plain reading, the Original Arbitration Agreement requiring arbitration of "any controversy or claim" irreconcilably conflicts with the Forum Selection Clause requiring that "any legal action" be brought in the courts of Salt Lake City, Utah (ECF 101 at 9). These conflicting provisions as to the required forum for the resolution of Plaintiffs' claims indicate there was no meeting of the minds as to whether Plaintiffs must arbitrate their claims. "The conflict between these provisions

---

[2] On June 29, 2020, pursuant to the Forum Selection Clause, the *O'Shaughnessy* case was transferred to the District of Utah where it is currently pending.

would not leave [Plaintiffs] with a definite understanding that [they] agreed to arbitrate all claims arising out of the Member Agreement." *See O'Shaughnessy*, No. 2019 WL 5296359, *4 (citing *Mitchell*, 280 F. Supp. 3d at 1286 ("Where the essential terms of a contract conflict, there can be no agreement.")). The court therefore concludes that the Original Arbitration Agreement is not a valid agreement to arbitrate.

Defendant argues that the *O'Shaughnessy* case was wrongly decided and points to cases compelling arbitration after reconciling arbitration and choice of venue provisions (ECF 96 at 13-15). Defendant focuses in particular on two cases, neither of which is controlling precedent, and which the court finds to be factually distinguishable. *See G.W. Van Keppel Co. v. Dobbs Imports*, No. 2:14-CV-02236-JAR, 2014 WL 5302974, (D. Kan. Oct. 15, 2014), and *Personal Security & Safety Systems Inc. v. Motorola Inc.*, 297 F.3d 388 (5th Cir. 2002). In *G.W. Van Keppel*, the court acknowledged that "[c]ourts have found forum-selection and arbitration clauses to conflict . . . where both clauses apply by their terms to the same types of claims." *See* 2014 WL 5302974, at *5. Unlike the "difference in terminology" present in *G.W. Van Keppel* where the arbitration provision applied to "any controversy, claim, or dispute," while the forum-selection clause applied to a "suit, action or proceeding," *id*. at *6, the Original Arbitration Agreement and the Forum Selection Clause here use the identical term of "any" in both provisions such that both clauses apply to the same types of claims. In the *Motorola* case, the Fifth Circuit gave effect to both the arbitration clause and the forum selection clause, holding that the forum selection clause covered "only those disputes that are not subject to arbitration." *See* 297 F.3d at 395–96. The Original Arbitration Agreement and the Forum Selection Clause in this case are distinguishable because of the breadth of their application to "*any* controversy or claim" and "*any* legal action." For these reasons, the court concludes that the Original Arbitration Agreement and the Forum Selection

Clause irreconcilably conflict, and the Original Arbitration Agreement is therefore not a valid agreement to arbitrate.

### C. Disputes of Fact Exist as to Whether Penhall is Bound by the 2020 Arbitration Agreement.

Defendant argues that even if the Original Arbitration Agreement is invalid, Penhall is bound by the 2020 Arbitration Agreement (ECF 96 at 19). Defendant contends that Penhall "expressly accepted" the 2020 Arbitration Agreement and Retroactive Clause contained in the 2020 P&Ps when she reactivated her member account and made a purchase in March 2020 (ECF 96 at 20). Defendant argues it is irrelevant that Penhall initiated this litigation prior to agreeing to the 2020 Arbitration Agreement because under the Retroactive Clause, the 2020 P&Ps apply retroactively to conduct that predates the effective date of the amendment when a member expressly accepts the amendment's terms as Penhall did here (ECF 96 at 20). In response, Penhall claims that she "never intended" to enter a new agreement with a company she had sued three months prior, and that if she did so, "it was by mistake" (ECF 101 at 16-17).[3] Defendant responds that Penhall's subjective intent is irrelevant, and she is nonetheless bound by her overt acts (ECF 102 at 10).

Under these facts, the court is unable to determine whether there was a "meeting of the minds on the essential terms of the agreement" as required under Utah law. *See Trans-Western Petroleum, Inc.*, 830 F.3d at 1177. The court finds that factual issues relating to Penhall's intent,

---

[3] Plaintiffs also argue that the issue of retroactivity "was already litigated" when the Southern District of California transferred this action under the Forum Selection Clause (ECF 36-1) and that departing from this determination would violate the law-of-the-case doctrine (ECF 101 at 18). The court disagrees. The law-of-the-case doctrine is "not an absolute limit on the court's power . . . Rather, it 'merely expresses the practice of the courts generally to refuse to reopen what has been decided.'" *See In re Adoption of EH*, 103 P.3d 177 (Utah Ct. App. 2004) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)). Here, the court has addressed the validity and applicability of the Forum Selection Clause (ECF 36-1). The court has not yet decided the validity of the 2020 Arbitration Agreement or the Retroactive Clause or the arbitrability of Penhall's claims under the 2020 Arbitration Agreement. As discussed herein, these issues are more appropriately addressed at a summary trial.

i.e., whether she "expressly accepted" the 2020 P&Ps or did so by mistake, are disputes of material fact that prevent the court from determining whether the 2020 Arbitration Agreement is a valid agreement to arbitrate between Penhall and Defendant. "When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement." *Bellman*, 563 F. App'x at 612 (quoting *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006)). As such, "when factual disputes [seem likely to] determine whether the parties agreed to arbitrate, the way to resolve them isn't by round after round of discovery and motions practice. It is by proceeding summarily to trial." *Id.* (quoting *Howard*, 748 F.3d at 984). In this case, resolution of the factual disputes relating to Penhall's intent is necessary to determine whether the Penhall is bound by the 2020 Arbitration Agreement and should therefore be resolved by summary trial.

In arguing Penhall is bound by the 2020 Arbitration Agreement, Defendant relies on a Northern District of California case compelling arbitration for plaintiffs who expressly accepted a clickwrap agreement (ECF 102 at 11). *See Trudeau v. Google, LLC*, 349 F. Supp. 3d 869, 879 (N.D. Cal. 2018). In that case, the defendant "implemented an extensive notice campaign and required that [plaintiffs] expressly accept the new [agreement]" and thereby "gave [the plaintiffs] direct notice and required express acceptance." *Id.* This case is factually distinguishable because Defendant has not provided evidence of any notice, direct or otherwise, to members like Penhall of the changes in the 2019 Member Agreement or the 2020 P&Ps. The issue of whether Penhall received notice of these changes is at least relevant to whether there was a meeting of the minds and is another issue of fact that may be addressed at a summary trial.

## V. CONCLUSION AND ORDER

Accordingly, the court hereby DENIES Defendant's Motion to Compel Arbitration and request for a stay of this action (ECF 96) without prejudice.[4] The court directs the parties to submit an attorney planning meeting report and proposed scheduling order within fourteen (14) days.

IT IS SO ORDERED.

DATED this 26 August 2022.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah

---

[4] Because the court has denied the Motion, the court does not at this time reach the issue of whether Defendant is estopped from compelling arbitration.