THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LINDSAY PENHALL, SARAH MALDONADO, and TIFFANIE RUNNELS, individually, and on behalf of a class of similarly situated individuals,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>YOUNG LIVING ESSENTIAL OILS, LC,<br><br>　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER SUSTAINING [112] DEFENDANT'S OBJECTIONS TO THE MEMORANDUM DECISION AND ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>Case No. 2:20-cv-00617-DBB-CMR<br><br>District Judge David Barlow |

The matter before the court is Defendant Young Living Essential Oils, LC's ("Young Living") Objections to the Memorandum Decision and Order Denying Motion to Compel Arbitration (the "Order").[1] After reviewing the briefing and relevant law, the court finds that the motion may be resolved without oral argument.[2] For the reasons below, the court sustains Young Living's objection to one part of the Order.

## BACKGROUND[3]

Plaintiffs Lindsay Penhall ("Ms. Penhall"), Sarah Maldonado ("Ms. Maldonado"), and Tiffanie Runnels ("Ms. Runnels") (collectively "Plaintiffs") are former Young Living distributors. To be a distributor, Plaintiffs had to agree to Young Living's Member Agreement, Policies and Procedures ("P&Ps"), and Compensation Plan (collectively the "Agreement").

---

[1] Objs. to the Mem. Decision & Order ("Objection"), ECF No. 112, filed Sept. 12, 2022.
[2] *See* DUCivR 7-1(g).
[3] Unless otherwise indicated, the facts are taken from pages 1 through 4 of the Mem. Decision & Order Den. Mot. to Compel Arbitration ("Order"), ECF No. 106, filed Aug. 29, 2022.

While Young Living periodically revised the documents, all versions of the P&Ps contained the same arbitration clause:

> If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration. The parties waive all rights to trial by jury or to any court. The arbitration will be filed with, and administered by, the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services (JAMS) under their respective rules and procedures. The Commercial Arbitration Rules and Mediation Procedures of the AAA are available at the AAA's website at www.adr.org. The Streamlined Arbitration Rules & Procedures of JAMS are available at the JAMS website at www.jamsadr.com.[4]

The pre-2019 version of the Member Agreement also had a forum selection clause: "Any legal action concerning the Agreement will be brought in the state and federal courts located in Salt Lake City, Utah."[5]

In December 2019, Young Living published a new Member Agreement that replaced the forum selection clause with a statement that the parties consent to "jurisdiction and venue before any state or federal court located in Salt Lake City, Utah, for any legal action not subject to arbitration, including for purposes of enforcing an award by an arbitrator, or any other matter not subject to arbitration as specified in the Policies and Procedures."[6] The revised P&Ps had the same arbitration clause incorporating the JAMS rules ("2020 Arbitration Agreement") as the previous versions. The revised P&Ps also contained a retroactive clause ("Retroactive Clause") in the dispute resolution section, which stated that "Amendments will not apply retroactively to

---

[4] 2014 P&Ps ¶ 13.2.2, ECF No. 96-5, filed Sept. 27, 2021.
[5] 2014 Member Agreement ¶ 10, ECF No. 96-2, filed Sept. 27, 2021.
[6] 2019 Member Agreement ¶ 11, ECF No. 96-4, filed Sept. 27, 2021.

conduct that occurred prior to the effective date of the amendment unless expressly accepted by the member."[7]

Ms. Runnels enrolled with Young Living on September 4, 2014; Ms. Maldonado enrolled on December 19, 2018; and Ms. Penhall enrolled on May 24, 2018. In November 2018, Ms. Penhall's membership was terminated due to inactivity.

On March 3, 2020, Ms. Penhall logged into Young Living's website to recover documentation from her former account.[8] Because her membership had been terminated, she had to reenroll to gain access to her account, which meant buying Young Living products at wholesale prices.[9] As illustrated in the screenshot below,[10] she was presented with a clickwrap agreement that included hyperlinks to the revised 2019 Member Agreement and the 2020 P&Ps, a statement that "I have read and agree to be bound by the terms and conditions of the Agreement," and a checkbox accompanied by the following text: "By clicking this box, I agree to these statements and to be bound by the terms and conditions of the Agreement."[11] Ms. Penhall clicked the checkbox and advanced to the shopping page.[12]

---

[7] 2020 P&Ps ¶ 13.2, ECF No. 96-8, filed Sept. 27, 2021 (the P&Ps were published on December 2, 2019 but they were effective as of January 1, 2020).
[8] Decl. Lindsay Penhall ¶ 3 ("Decl. Penhall"), ECF No. 25-1, filed Mar. 16, 2020.
[9] *Id.* ¶¶ 4–5.
[10] Decl. Barrow ¶ 17.
[11] *Id.* ¶¶ 23–27.
[12] *See* Decl. Penhall ¶ 6; Decl. Barrow ¶ 28.

## Terms and Conditions

I have read and agree to be bound by the terms and conditions of the Agreement (which includes this Member Agreement, the Policies and Procedures, Privacy Policy, and the Compensation Plan). I certify that I am 18 years old and legally able to enter into the Agreement. I understand that I have the right to terminate my Young Living Member Agreement at any time, with or without reason, by sending written notice to the Company at the above listed address. I understand that I must purchase one of the enrollment options in order to qualify as a member and receive whole sale pricing.

- Policies & Procedures
- Compensation Plan
- Terms and Conditions of the Compensation Plan
- Privacy Policy
- Member Agreement

☐ By clicking this box, I agree to these statements and to be bound by the terms and conditions of the Agreement.

Back to Previous Page                                                                                    Continue

Before completing her purchase, Ms. Penhall then had to click another checkbox next to the following text: "By placing your order, you agree to Young Living's Policies and Procedures."[13] The phrase "Young Living's Policies and Procedures" was hyperlinked to the 2020 P&Ps.[14]

Plaintiffs brought a proposed class action against Young Living in the Southern District of California on December 6, 2019.[15] The district court transferred the case to the District of Utah on August 17, 2020.[16] After Young Living's first motion to dismiss and compel arbitration was denied as moot when the court granted Plaintiffs leave to amend their Complaint,[17] Young Living moved to compel arbitration and stay proceedings on September 27, 2021.[18] Young Living's motion was denied on August 29, 2022.[19]

On September 12, 2022, Young Living objected to one part of the Order.[20] Young Living contended that the 2020 Arbitration Agreement was valid, enforceable, and that it was

---

[13] Decl. Barrow ¶ 28.
[14] *Id.* ¶ 29.
[15] ECF No. 1.
[16] ECF No. 36-1.
[17] *See* ECF No. 90.
[18] Mot. to Compel Arbitration ("Mot. to Compel"), ECF No. 96.
[19] Order 13.
[20] Objection 6.

undisputed that Ms. Penhall intended to enter the Agreement.[21] Plaintiffs responded on

September 27, 2022,[22] and Young Living replied on October 4, 2022.[23] The court denied

Plaintiffs leave to file a surreply on October 7, 2022.[24]

## DISCUSSION

Young Living does not object to the Order's findings that the court has the authority to

determine the validity of the Arbitration Agreement or that the original arbitration agreement

was invalid. It objects only to the part of the Order concerning the need for a summary trial to

determine whether Ms. Penhall is bound by the 2020 Arbitration Agreement. Before addressing

Young Living's objection, the court discusses the applicable standard of review.

The parties disagree about the standard of review the court should apply.[25] Given an

objection, if the motion to compel is non-dispositive, then the court will modify or set aside an

order if it is clearly erroneous or contrary to law.[26] But if the motion to compel is dispositive, the

court will review an order de novo.[27] Courts in the Tenth Circuit have applied both standards on

a motion to compel arbitration.[28] The court need not decide this issue because the result here is

the same under either standard.

---

[21] *Id.* at 7–10.

[22] Pls. Resp. in Opp'n to Def. Objs. ("Resp."), ECF No. 118, filed Sept. 27, 2022.

[23] ECF No. 119.

[24] ECF No. 123.

[25] Objection 6; Resp. 2.

[26] Fed. R. Civ. P. 72(a); *see United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, No. 1:20-cv-00089, 2022 WL 4016810, at *1 (D. Utah Sept. 2, 2022) (cleaned up).

[27] *Harsay v. Luckert*, No. 21-cv-4080, 2022 WL 3367674, at *1 (D. Kan. Aug. 16, 2022).

[28] *Judd v. KeyPoint Gov't Sols., Inc.*, No. 18-cv-00327, 2018 WL 3526222, at *1 n.1 (D. Colo. July 23, 2018), *R. & R. adopted*, 2018 WL 6603888 (D. Colo. Dec. 4, 2018); *see also Smith v. AHS Okla. Heart, LLC*, No. 11-CV-691, 2012 WL 3156878, at *1 n.1 (N.D. Okla. June 6, 2012), *R. & R. adopted*, 2012 WL 3156877 (N.D. Okla. Aug. 3, 2012) (citing *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1140–41 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013)) ("The Tenth Circuit has not resolved the issue.").

I.      **Intent to Accept the 2020 Arbitration Agreement**

The Order found that there were questions of fact about whether Ms. Penhall accepted the

2020 P&Ps. The Order highlighted Ms. Penhall's claim that "she 'never intended' to enter a new

agreement with a company she had sued three months prior, and that if she did so, 'it was by

mistake.'"[29] The Order also noted that the issue of notice was relevant.[30] On that basis, the Order

reasoned that the question of whether Ms. Penhall intended to accept the agreement was a

"dispute of material fact that prevent[ed] the court from determining whether the 2020

Arbitration Agreement [wa]s a valid agreement to arbitrate between Penhall" and Young

Living.[31] The Order concluded that the factual dispute dictated a summary trial.[32]

Young Living contends that the Order was erroneous because there are no "relevant,

disputed 'factual issues.'"[33] It argues that Ms. Penhall does not dispute that the 2020 Arbitration

Agreement contained an arbitration clause, that she had a chance to read the agreement by

clicking on the hyperlinks, and that she clicked on a checkbox that read, "By clicking this box, I

agree to these statements and to be bound by the terms and conditions of the Agreement."[34]

Young Living further contends that clickwrap agreements like the one at issue are "valid and

binding,"[35] and enforceable under federal law.[36] It also argues that subjective intent is immaterial

---

[29] Order 11 (quoting Mem. in Opp'n to Mot. to Compel 16–17, ECF No. 101, filed Oct. 25, 2021).
[30] *Id.* at 12.
[31] *Id.*
[32] *Id.* (citing *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014) (unpublished) ("[W]hen factual disputes seem likely to determine whether the parties agreed to arbitrate, the way to resolve them isn't by round after round of discovery and motions practice. It is by proceeding *summarily* to trial." (cleaned up))).
[33] Objection 7.
[34] *Id.*; Barrow Decl. ¶ 28.
[35] Objection 8 (citing *Hancock v. AT&T Co.*, 701 F.3d 1248, 1255 (10th Cir. 2012); *Hugger-Mugger, L.L.C. v. Netsuite, Inc.*, No. 2:04-CV-592, 2005 WL 2206120, at *6 (D. Utah Sept. 12, 2005)).
[36] *Id.* (collecting district court cases).

when analyzing whether a person accepts a binding agreement.[37] In short, it claims that Ms. Penhall's objective actions are dispositive and the burden "shifts to Plaintiffs to 'raise a genuine dispute of material fact regarding the existence of an agreement.'"[38] Yet "Plaintiffs have done nothing to carry their burden . . . ."[39]

Plaintiffs respond that Ms. Penhall logged into her Young Living account and the website prompted her to reactivate her membership by purchasing a product at wholesale prices.[40] She recalls having to click a button to continue with the transaction and she went to the shopping page where she purchased over a hundred dollars' worth of Young Living products.[41] She did not recall reading any agreements.[42] Ms. Penhall claims that she "never intended to become a Young Living distributor again or to be bound by the amended . . . Agreement, which included the 2020 Arbitration Agreement."[43]

"The Supreme Court has 'long recognized and enforced a liberal federal policy favoring arbitration agreements.'"[44] "[W]hether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate."[45] "Before forming an enforceable contract, there must be a meeting of the minds on the essential terms of the

---

[37] *Id.* at 9 (citing *McRann v. United Intern. Holdings, Inc.*, 61 F. App'x 563, 567 (10th Cir. 2003) (unpublished)). Young Living also cites several district court cases for the proposition that an inability to remember accepting the clickwrap agreement is not enough to invalidate an otherwise sound clickwrap agreement. *Id.* (collecting cases).

[38] *Id.* at 9–10 (quoting *BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017)).

[39] *Id.* at 10.

[40] Resp. 3.

[41] *Id.*; Penhall Decl. ¶¶ 4–7.

[42] Resp. 3–4.

[43] *Id.* at 4.

[44] *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (internal quotation marks omitted) (*quoting Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

[45] *Id.* (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

agreement."[46] Intent can be a factual issue "that must be resolved to determine if the parties had a meeting of the minds such that a contract was formed."[47] Yet "the terms of an unambiguous private contract must be enforced irrespective of the parties' subjective intent."[48] Here, no party has contended that the 2020 Arbitration Agreement was ambiguous. Consequently, "the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[49]

Clickwrap agreements "require a user to agree to the terms and conditions before using a website or application—for example, clicking a box stating 'I agree' to the terms of use[,]" and they are generally enforceable agreements.[50] As the Tenth Circuit has noted, these types of agreements "are increasingly common and 'have routinely been upheld.'"[51] Indeed, "'[f]ederal courts have consistently enforced clauses contained in clickwrap agreements' similar to the one at issue here, where the agreement is 'presented via a hyperlink to a page separate from the one containing the box or button manifesting assent.'"[52] The Tenth Circuit has found that "basic contract law principles . . . indicate that if a clickwrap agreement gives a consumer reasonable

---

[46] *Trans-W. Petroleum, Inc. v. United States Gypsum Co.*, 830 F.3d 1171, 1176 (10th Cir. 2016).

[47] *George Golf Design, Inc. v. Greenbrier Hotel Corp.*, No. 5:10-cv-01240, 2012 WL 4748789, at *4 (S.D. W. Va. Oct. 4, 2012).

[48] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009); *see MC Oil & Gas, LLC v. Ultra Res., Inc.*, 144 F. Supp. 3d 1288, 1296 (D. Utah 2015) ("The parties' intentions are determined from the plain meaning of unambiguous contractual language."); *Allen v. Bissinger & Co.*, 219 P. 539, 541 (Utah 1923) ("The inquiry is limited to evidence of the expressed intention of the parties, by words or acts, or both, as it is only from the words and conduct of the parties that a court can form any conclusion as to their intention."); 1 Williston on Contracts § 4:1 (4th ed. 2022) ("In the formation of contracts, however, it was long ago settled that secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties.").

[49] *Celtig, LLC v. Patey*, 489 F. Supp. 3d 1275, 1283 (D. Utah 2020) (quoting *WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1145 (Utah 2002)).

[50] *Route App, Inc. v. Heuberger*, No. 2:22-cv-291, 2022 WL 2316377, at *3 (D. Utah June 28, 2022) (citing *Hancock*, 701 F.3d at 1257–58)).

[51] *Hancock*, 701 F.3d at 1256 (quoting *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1226 (D. Haw. 2010)).

[52] *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190–91 (D.N.M. 2018) (quoting *Bassett v. Elec. Arts Inc.*, No. 13-cv-04208, 2015 WL 1298644, at *4 (E.D.N.Y. Feb. 9, 2015)).

notice of its terms and the consumer affirmatively manifests assent to the terms, the consumer is bound by the terms."[53]

Ms. Penhall avers that she did not intend to enter into an agreement and that she does not remember reading the revised terms and conditions.[54] Under Utah contract law, this is insufficient to create a genuine issue of material fact. Intent is determined "from the plain meaning of the contractual language,"[55] not "subjective belief"[56] or "subjective intent."[57] "[I]n the context of contract formation, . . . each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it."[58] It is undisputed that Ms. Penhall went to Young Living's website, was presented with the clickwrap agreement, and checked a box stating that she had read and agreed to the applicable terms and conditions.[59]Additionally, before making her purchase, Ms. Penhall had to click another box that read, "By placing your order, you agree to Young Living's Policies and Procedures."[60] That Ms. Penhall states that she subjectively intended something other than what she agreed to does not change the result.

Concerning Ms. Penhall's claim that she did not remember seeing the Agreement's terms,[61] "[c]ourts routinely hold such failure of memory to be insufficient to invalidate a clickwrap agreement."[62] Likewise, there is no support here for the proposition that the agreement

[53] *Hancock*, 701 F.3d at 1256; *see Chavez L. Offs., P.A. v. Tyler Techs., Inc.*, No. 1:21-cv-00293, 2021 WL 4134847, at *5 (D.N.M. Sept. 10, 2021) (quoting *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007)).
[54] *See* Resp. 3–4, 10.
[55] *Celtig*, 489 F. Supp. 3d at 1283 (quoting *WebBank*, 2002 UT 88, ¶ 19).
[56] *McBroom v. Child*, 2016 UT 38, ¶ 22, 392 P.3d 835.
[57] *See MC Oil & Gas*, 144 F. Supp. 3d at 1296 ("A party's unjustified subjective intent cannot be considered.").
[58] *Nelson v. 15 White Barn Drive LLC*, 2022 UT App 106, ¶ 19, 517 P.3d 1062.
[59] *See* Resp. 3.
[60] Barrow Decl. ¶ 29; *see* Penhall Decl. ¶ 7 (stating that Ms. Penhall completed a purchase on Young Living's website).
[61] Penhall Decl. ¶ 6.
[62] *Davis*, 303 F. Supp. 3d at 1192 (collecting cases).

could be invalidated for a lack of "meeting of the minds" because one of the parties made a "mistake."[63] Ms. Penhall had the opportunity to read the clickwrap agreement and the hyperlinked P&Ps containing the 2020 Arbitration Agreement. She "cannot avoid the contract on the ground of mistake if [s]he sign[ed] it without reading it"[64] or if she read it and no longer remembers that she did.

## II.   Adequate Notice of the 2020 Arbitration Agreement

The Order next reasoned that the "issue of whether Penhall received notice . . . [wa]s at least relevant to whether there was a meeting of the minds and is another issue of fact that may be addressed at a summary trial."[65]

The court agrees that notice is relevant. As stated in the Order, the issue of whether Ms. Penhall had adequate notice of Young Living's changes to the pertinent agreements is "relevant to whether there was a meeting of the minds."[66] If there is a genuine factual dispute as to the question of reasonable notice and assent, then a summary trial is appropriate.[67] However, the

---

[63] See *Trans-W. Petroleum*, 830 F.3d at 1176 ("[M]istake is raised as a defense *after* a contract has been formed."); *Sexton v. Evergreen Vill. Cmty. MHC, LLC*, No. 2:19-cv-00675, 2020 WL 7038501, at *4 (D. Utah July 20, 2020) ("Under the doctrine of mistake, the litigating parties must, at a minimum, have entered into an agreement the basis for which was based on an alleged misunderstanding of material facts.").

[64] *McBroom*, 2016 UT 38, ¶ 23 (quoting *Garff Realty Co. v. Better Buildings*, 234 P.2d 842, 844 (Utah 1951)); *see Semenov v. Hill*, 982 P.2d 578, 581 (Utah 1999) ("Where a person signs a document, [s]he is not permitted to show that [s]he did not know its terms, and in the absence of fraud or mistake [s]he will be bound by all its provisions, even though [s]he has not read the agreement and does not know its contents.").

[65] Order 12.

[66] *Id.*; *see Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1281 (D. Utah 2017). "The focus when deciding the enforceability of a webpage clickwrap agreement requiring a user to consent to any terms and conditions by clicking on a dialog box on the screen in order to proceed with the Internet transaction 'is whether the party clicking it had reasonable notice of and manifested assent to the agreement.'" 150 Am. Jur. Trials 383 (2017) (quoting *Jallali v. Nat'l Bd. of Osteopathic Med. Exam'rs, Inc.*, 908 N.E.2d 1168, 1173 (Ind. Ct. App. 2009)); *see Hancock*, 701 F.3d at 1256 ("[B]asic contract law principles . . . indicate that if a clickwrap agreement gives a consumer reasonable notice of its terms and the consumer affirmatively manifests assent to the terms, the consumer is bound by the terms.").

[67] *See* Order 12; *Mitchell*, 280 F. Supp. 3d at 1272 ("If the court finds material factual disputes preclude it from determining the arbitration question as a matter of law, the court must proceed to a summary trial to resolve those disputes of fact.").

clickwrap agreement, the 2020 Arbitration Agreement, and Ms. Penhall's actions show that Young Living gave sufficient notice and that she agreed.[68]

First, most clickwrap agreements generally contain adequate notice because of the "express and unambiguous manifestation of assent through the 'click' of an 'I accept' button."[69] Before becoming a Young Living distributor or purchasing Young Living products at wholesale prices, individuals were presented with an unambiguous clickwrap agreement. The agreement contained a paragraph stating that the individual had "read and agree[d] to be bound by the terms and conditions of the Agreement" that included the Member Agreement and P&Ps.[70] Beneath the text were hyperlinks to the corresponding documents.[71] Underneath the hyperlinks, there was a checkbox next to a block of text that read, "By clicking on this box, I agree to these statements and to be bound by the terms and conditions of the Agreement."[72] An individual could not advance to the next stage of the membership application or purchase a product at wholesale prices without checking the box.[73]

---

[68] The other cases cited in this part of the Order do not compel or counsel a different result. *See Bellman*, 563 F. App'x at 614 (no request that Plaintiff sign the agreement and Plaintiff did not sign it); *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 476 (10th Cir. 2006) (employee did not sign the agreement but showed her assent to new arbitration clause by staying on the job); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 979 (10th Cir. 2014) (summary trial needed where there were "critical questions of fact" involving initial oral agreement and subsequent written agreement). Additionally, *Trudeau v. Google*, which Young Living raised and the Order discusses, is non-binding, applies the law of a different state, and involves a different fact pattern involving notice to current customers/advertisers. 349 F. Supp. 3d 869 (N.D. Cal. 2018).

[69] *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018); *see Mason v. Midland Funding LLC*, 815 F. App'x 320, 322 (11th Cir. 2020) (unpublished) ("Courts have . . . largely approved the use of clickwrap agreements for the same basic reason that they have approved the use of shrink wrap agreements: the consumer is on notice that an agreement exists and receives the opportunity to review the terms of that agreement and to consent."); *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (collecting cases); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014).

[70] Barrow Decl. ¶ 26.

[71] *Id.* ¶ 27.

[72] *Id.* ¶ 28.

[73] *Id.* ¶ 16.

Next, the hyperlinked 2020 P&Ps did not conceal the revised arbitration agreement.[74] On the contrary, the "Dispute Resolution and Disciplinary Action" section is set apart with bold letters and a large font size.[75] The section spans three pages.[76] Further, the arbitration sub-section is set apart with a distinctive header and fills nearly a page.[77] Finally, the first sentence offers key information: "If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration."[78] The next statement, set apart from the preceding and succeeding text, reads:

> THE PARTIES WAIVE THEIR RESPECTIVE RIGHTS TO A BENCH OR JURY TRIAL AND AGREE TO SETTLE THEIR DISPUTES BY SUBMITTING THE CONTROVERSY TO BINDING ARBITRATION.[79]

In short, the Arbitration Agreement was available to read, easy to find, and made plain that claims involving the Agreement would be settled by binding arbitration.

Last, Ms. Penhall's actions show that there is no dispute of material fact that she had notice of and manifested her assent to the 2020 Arbitration Agreement. On March 3, 2020, Ms. Penhall was presented with a clickwrap agreement containing hyperlinks to the 2019 Member Agreement and the 2020 P&Ps that included the 2020 Arbitration Agreement.[80] She checked the box indicating that she had read and understood the Agreement.[81] Additionally, before proceeding with her purchase, the 2020 P&Ps was accessible via a hyperlink and Ms. Penhall

---

[74] "[R]easonably conspicuous notice of the existence of contract terms . . . are essential if electronic bargaining is to have integrity and credibility." *Hancock*, 701 F.3d at 1257 (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002)).

[75] *See* 2020 P&Ps 24.

[76] *See id.* at 24–26.

[77] *See id.* ¶ 13.2.2.

[78] *Id.*

[79] *Id*.

[80] Order 4.

[81] *Id.*; Resp. 3.

had to again accept the current P&Ps by clicking on a checkbox.[82] Thus, Ms. Penhall had an opportunity to review the revised agreements before affirmatively accepting the terms and conditions.[83] She agreed that she had read them and accepted them when she clicked the first box. She then accepted the current P&Ps again when clicking the second box. The court therefore finds as a matter of law that Young Living gave Ms. Penhall adequate notice. And because the clickwrap agreement gave Ms. Penhall "reasonable notice . . . and [she] affirmatively manifest[ed] assent to the terms," the clickwrap agreement was valid.[84]

The only issue remaining is the scope of the 2020 Arbitration Agreement—specifically, whether it applied retroactively to Ms. Penhall's claims.[85] While Plaintiffs' Response focuses heavily on the retroactivity issue—indeed, very nearly to the exclusion of the actual issue before this court—the Order did not decide that issue and Young Living's objection is not based upon it. Therefore, the court does not address it.

## ORDER

For the above reasons, the court SUSTAINS Defendant's Objections to the Memorandum Decision and Order.[86] The court VACATES Part IV.C of the Memorandum Decision and Order Denying Motion to Compel Arbitration.[87]

---

[82] *See* Barrow Decl. ¶¶ 26–29; *Smith v. Fed Ex*, No. CIV-22-440, 2022 WL 2819142, at *5 (W.D. Okla. July 19, 2022) (finding that a clickwrap agreement where the user had to click a button to confirm and complete a purchase showed "sufficient evidence demonstrating that [the plaintiff] was notified that he was required to accept [the Defendant's] User Agreement"); *Chavez L. Offs.*, 2021 WL 4134847, at *5 (same).

[83] *See Mitchell*, 280 F. Supp. 3d at 1272 ("If the court finds material factual disputes preclude it from determining the arbitration question as a matter of law, the court must proceed to a summary trial to resolve those disputes of fact.").

[84] *Hancock*, 701 F.3d at 1256.

[85] *See* Order 11 ("The court has not yet decided the validity of . . . the Retroactive Clause.").

[86] ECF No. 112.

[87] ECF No. 96.

Signed October 27, 2022.

BY THE COURT

_____

David Barlow
United States District Judge